IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JHON BRISKEN, #A0219610,<br><br>            Plaintiff,<br><br>      v.<br><br>DR. AUSTIN WHITEING, *et al.*,<br><br>            Defendants. | Civ. No. 20-00301-DKW-KJM<br><br>ORDER DISMISSING COMPLAINT<br>WITH PARTIAL LEAVE TO AMEND |

## I.  INTRODUCTION

Before the Court is pro se Plaintiff Jhon Brisken's Complaint brought pursuant to 42 U.S.C. § 1983.  ECF No. 1, 5.[1]  Plaintiff alleges that Defendants violated his constitutional rights during his incarceration at the Halawa Correctional Facility ("HCF").[2]  For the following reasons, the Complaint is DISMISSED with partial leave to amend, as specified below.

---

[1]The Court refers to the electronic numbering and pagination system used for all filings in the District of Hawaii.

[2]Plaintiff names Flo Magalenes, Dr. Austin Whiteing, Jacob Torquato, Brandon Ching, Sergeant Mauhuka, Correctional Officer Jefferson, Edmund Hyun, Clayton Hee, Max Otani, Fituina Tui, and Gary Caplin as Defendants in their official and individual capacities.

## II. **STATUTORY SCREENING**

The Court must conduct a pre-Answer screening of all prisoners' pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  Claims or complaints that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

In determining whether a complaint should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015).  All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff.  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020).

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Likewise, the "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me

2

accusation" does not meet this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

The Court liberally construes a pro se litigant's pleadings and affords him the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Although the Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at 1130, if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### III.  <u>BACKGROUND</u>[3]

Plaintiff claims a long history of mental health issues, including obsessive compulsive personality disorder ("OCPD"). *Id.* at 13-14. He does not specify how the condition manifests itself.

In Count I, Plaintiff claims Defendants Magalenes, Whiteing, Torquato, and Ching violated the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at 11-16. Plaintiff starts by asserting he should not have been

---

[3]Plaintiff's factual allegations are accepted as true. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

moved from the HCF to the Saguaro Correctional Center ("SCC") in 2014, where he experienced various hardships.  *Id.* at 11-12.  Plaintiff also claims he should not have been housed in the HCF's Special Holding Unit ("SHU") upon his return to Hawaii in 2019 because of his mental health issues.  *Id.* at 12-16.  Plaintiff says Magalenes, Whiteing, Torquato, and Ching were responsible for his placement in the SHU.  *Id.* at 13.

In Count II, Plaintiff claims Defendants Jefferson and Mauhuka violated the First Amendment by retaliating against him.  *Id.* at 17-19.  Plaintiff says, beginning in February 2020, Jefferson (1) refused him dinner one night, (2) challenged him to a fight, (3) told Plaintiff that he tampers with his food, (4) denied him access to the medical unit, (5) submitted a false report, (6) woke him up at night, and (7) used profanities when addressing him.  *Id.* at 17.  Plaintiff says Mauhuka cancelled a May 8, 2020 parole hearing and attempted to move him to an area within the HCF that houses gang members that do not like him.  *Id.* at 18-19.  Plaintiff also claims Jefferson and Mauhuka together submitted a false report in March 2020, and "shook down" his cell and threw away his "legal documents" on May 10, 2020. *Id.* at 18-19.  Plaintiff says he filed grievances against Jefferson and Mauhuka on May 20, 2020.  *Id.* at 19.

In Count III, Plaintiff claims Defendants Hyun, Hee, Otani, and Tui violated the Due Process Clause of the Fourteenth Amendment by denying him parole.  *Id.*

at 21-25.  Plaintiff also claims Defendant Caplin violated the Due Process Clause by moving him to the SHU.  *Id.* at 23-24.

Plaintiff seeks $15,000 in damages from each Defendant.  *Id*. at 10.  He does not seek any injunctive relief.

## IV.  DISCUSSION

### A.  Legal Framework for Claims Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Additionally, a plaintiff must allege that he suffered a specific injury as a result of a defendant's conduct and affirmatively link that injury to the violation of his rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### B.  Eleventh Amendment Immunity

The Eleventh Amendment bars damages actions against state officials in their official capacity.  *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).  It generally does not bar suits for prospective, non-monetary relief against state officials.  *N. E. Med. Servs., Inc. v. Cal. Dep't of Health Care Servs., Health & Human Servs. Agency, Cal.*, 712 F.3d 461, 466 (9th Cir. 2013).

Plaintiff names Defendants in both their individual and official capacities. *See* Compl., ECF No. 1 at 1, 5-9. Because Plaintiff seeks only monetary damages, however, the Eleventh Amendment bars his claims against Defendants in their official capacities. *Flint*, 488 F.3d at 824-25. Plaintiff's claims against all Defendants in their official capacities are DISMISSED with prejudice.

## C. Absolute Immunity for Parole Board Officials

"[P]arole board officials are entitled to absolute immunity from suits by prisoners for actions taken when processing parole applications." *Sellars v. Procunier*, 641 F.2d 1295, 1302 (9th Cir. 1981). This is because the decision-making process of parole board officials "must be kept free from fear." *Id.* at 1303. "If parole board officials had to anticipate that each time they rejected a prisoner's application for parole, they would have to defend that decision in federal court, their already difficult task of balancing the risk involved in releasing a prisoner whose rehabilitation is uncertain against the public's right to safety would become almost impossible." *Id.* This is so even though "absolute immunity for parole board officials . . . leave[s] the genuinely wronged prisoner without civil redress against the official whose malicious or dishonest actions deprive the prisoner of liberty." *Id.*

Plaintiff claims Defendants Hyun, Hee, Otani, and Tui violated his due process rights in denying him parole. *See* Compl., ECF No. 1 at 20-25. Officials

6

of the Hawaii Paroling Authority enjoy absolutely immunity for actions taken in processing Plaintiff's parole application. *Sellars*, 641 F.2d at 1302. Plaintiff's claims in Count III against Hyun, Hee, Otani, and Tui are DISMISSED WITH PREJUDICE.

## D. Eighth Amendment claims

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition applies to the States through the Due Process Clause of the Fourteenth Amendment. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163-64 (9th Cir. 1999). To prevail on an Eighth Amendment claim, a plaintiff must satisfy both an objective and a subjective component. *See Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020). To meet the objective component, the deprivation alleged must be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This means that a prison official's act or omission "must result in the denial of the minimal civilized measure of life's necessities." *Id*. To meet the subjective component, the plaintiff must prove that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 834. A prison official may be found to have been deliberately indifferent if the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

### 1. Medical care at the HCF

Plaintiff claims Defendants Magalenes, Whiteing, Torquato, and Ching violated the Eighth Amendment by moving him to the SHU and depriving him of mental health care. Compl., ECF No. 1 at 11-16. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam).

"To establish a claim of inadequate medical care, a prisoner must first 'show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* Serious medical needs may relate to physical, dental, or mental health. *Id.* If a prisoner establishes a sufficiently serious medical need, he must then show that the official's response to the need was deliberately indifferent. *Id.* at 786. "An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment." *Id.* To show deliberate indifference, the plaintiff "must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the

[official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks omitted).

Plaintiff fails to state a claim of inadequate medical care at the HCF. To start, he does not state consistently when he was moved to the SHU and by whom. Plaintiff says he has been in the SHU since his return to Hawaii in 2019, since February 2020, and since some time after April 2020. Likewise, Plaintiff fails to identify consistently who moved him to the SHU. He states both that Magalenes, Whiteing, Torquato, and Ching moved him to the SHU, and that Gary Caplin ordered his move. These inconsistencies render Plaintiff's claim uncertain and implausible, and do not provide Defendants with the reasonable notice to which they are entitled or identify the basis of the claims they are expected to defend. *See generally* Fed.R.Civ.P. 8(a).

Moreover, Plaintiff fails to show he has a "serious medical need." *Edmo*, 935 F.3d at 785. Although Plaintiff states he was diagnosed with OCPD, not every mental health condition constitutes a serious medical need. The Court has found no case holding that OCPD is a serious medical need, and Plaintiff fails to specify how his condition manifests itself. Plaintiff's threadbare recital that OCPD is "considered a serious medical need" is insufficient. *Iqbal*, 556 U.S. at 678. Plaintiff does not claim that being housed in the SHU could result in significant injury or the unnecessary and wanton infliction of pain. Nor does he show how

being housed in the SHU is worsening his condition or how it might do so.  Indeed, it is not even clear whether Plaintiff's OCPD diagnosis still stands.  *See* Compl., ECF No. 1 at 14 (noting that Plaintiff's OCPD diagnosis had been downgraded).

Plaintiff also fails to allege that Magalenes, Whiteing, Torquato, and Ching were deliberately indifferent to his medical needs.  Instead, Plaintiff appears to acknowledge that they made a considered judgment in moving him to the SHU. Whiteing visited Plaintiff in the SHU and told him, "This is where you need to be." Plaintiff also acknowledges that members of the mental health team visit him in the SHU.  Although Plaintiff would like to spend more time with these professionals, he alleges no facts demonstrating that Magalenes, Whiteing, Torquato, and Ching consciously disregarded an excessive risk to his health.

To the extent Plaintiff claims he was denied treatment and programming as a result of his placement in the SHU, he does not describe the nature of the treatment and programs or when the alleged deprivation occurred.  In fact, while Plaintiff says, at one point, that Whiteing, Torquato, and Ching have not responded to his requests for treatment, he does not allege that those requests were denied. Plaintiff's inadequate-medical-care claims against Magalenes, Whiteing, Torquato, and Ching in Count I are DISMISSED with leave to amend.

10

### 2.  Other Conditions at the HCF

Although Plaintiff also alleges that he is fed "lesser food," has fewer

privileges, and receives insufficient toothpaste and toilet paper in the SHU, he does

not claim that Magalenes, Whiteing, Torquato, or Ching had anything to do with

these conditions, nor does he provide the details that might help determine the

seriousness of these deprivations.  *See Spencer v. Peters*, 857 F.3d 789, 800 (9th

Cir. 2017) ("In a § 1983 action, the plaintiff must . . . demonstrate that the

defendant's conduct was the actionable cause of the claimed injury.  To meet this

causation requirement, the plaintiff must establish both causation-in-fact and

proximate causation." (internal quotation marks omitted)).  Plaintiff's claims

regarding the conditions of confinement in the SHU are DISMISSED with leave to

amend.

### 3.  Transfer to and the Conditions of Confinement at the SCC

While Plaintiff claims that he should not have been transferred to the SCC in

2014, he does not have any right to remain in a particular correctional facility.  *See*

*Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no

justifiable expectation that he will be incarcerated in any particular prison within a

State, he has no justifiable expectation that he will be incarcerated in any particular

State.").  Moreover, given that the transfer he complains of occurred six years ago,

this particular complaint is time-barred.  *See Flynt v. Shimazu*, 940 F.3d 457, 461

(9th Cir. 2019) ("[C]laims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits."); *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) ("In Hawaiʻi, the statute of limitations for personal injury actions is two years.").

To the extent Plaintiff attempts to challenge the conditions of his confinement at the SCC, this is not the proper venue for those claims. *See* 28 U.S.C. §§ 1391(b), 1406; *Dermendziev v. Washington*, 624 F. App'x 454, 455 (9th Cir. 2015). The proper venue for those claims is the United States District Court for the District of Arizona.

Plaintiff's claims regarding his transfer to the SCC are DISMISSED WITH PREJUDICE. Plaintiff's claims regarding the conditions of confinement at the SCC are DISMISSED WITHOUT PREJUDICE to his reassertion of those claims in a new action in Arizona, should he choose to file one.

### E. First Amendment Claims

Plaintiff alleges Defendants Jefferson and Mauhuka violated the First Amendment by retaliating against him. *See* Compl., ECF No. 1 at 17-19. Retaliatory actions taken against a prisoner for having engaged in protected conduct violate the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Within the prison context, a viable claim of First Amendment retaliation claim includes five basic elements: (1) an assertion that a state actor

took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct; and that such action (4) chilled the prisoner's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Id.* Purely retaliatory actions taken against a prisoner for having exercised his right to file prison grievances may violate the First Amendment. *See Rhodes*, 408 F.3d at 567.

Plaintiff fails to state a retaliation claim against either Jefferson or Mauhuka because the alleged mistreatment occurred before Plaintiff engaged in any protected conduct. Plaintiff states he filed grievances against Jefferson and Mauhuka on May 20, 2020. He does not identify any alleged retaliation after that date. Instead, Plaintiff describes mistreatment he experienced in February, March, and early May 2020. These earlier events could not have been motivated by Plaintiff's May 20, 2020 grievances. While Plaintiff says that he had a small dispute with Jefferson over a pen in February 2020, he does not provide any details about this dispute or explain why it constitutes protected conduct. Likewise, Plaintiff does not say when he made a statement to the assistant warden regarding Jefferson's conduct. Plaintiff fails to allege that Jefferson mistreated him because of his protected conduct.

Regarding Mauhuka's alleged acts of retaliation, Plaintiff fails to set forth a plausible timeline. Plaintiff claims he complained to Mauhuka about Jefferson on

May 8, 2020.  Plaintiff then states that Mauhuka cancelled his March 8, 2020

parole hearing.  According to Plaintiff, his parole hearing was rescheduled from

May 8, 2020, to March 8, 2020—that is, back in time.  Later, however, Plaintiff

says that he was denied parole on March 8, 2020, the date of the supposedly

cancelled hearing.  Plaintiff's retaliation claims against Jefferson and Mauhuka in

Count II are DISMISSED with leave to amend.

**F.  Fourteenth Amendment Claim Against Caplin**

Plaintiff claims Defendant Caplin violated the Fourteenth Amendment by

moving him to the SHU.  Compl., ECF No. 1 at 23-24. The Fourteenth

Amendment's Due Process Clause protects against the deprivation of liberty

without due process of law.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  To

invoke the protection of the Due Process Clause, a prisoner must first establish the

existence of a liberty interest.  *Id.*  Liberty interests may arise from the Due Process

Clause or state law.  *Id.*  If a protected interest is identified, then, and only then, the

inquiry turns to what process is due.  *Id.* at 224.

In the prison context, a constitutionally protected liberty interest arises only

when a restraint imposes an "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472,

483-85 (1995); *Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994)

(allegations that prison regulations were not followed during disciplinary

14

proceedings, without more, does not violate the Due Process Clause).  Inmates generally have no liberty interest in being confined in the general prison population rather than in segregated housing.  *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (holding that inmate's placement in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life).

Courts have found atypical and significant hardships in a very limited scope of cases.  *See*, *e.g.*, *Wilkinson*, 545 U.S. at 221-24 (holding liberty interests were implicated by indefinite confinement in highly restrictive "supermax" prison, where the inmates were deprived of almost all human contact and were disqualified from parole consideration); *Serrano v. Francis*, 345 F.3d 1071, 1078-79 (9th Cir. 2003) (finding placement of a disabled inmate without his wheelchair in segregation unit unequipped for disabled persons gave rise to a liberty interest). Unusually long periods of segregation in violent, overcrowded or dangerous conditions may also be sufficient to constitute a cognizable due process claim.  *See Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (noting without deciding that two years in segregation in violent and overcrowded conditions while undergoing forced psychiatric evaluation may constitute "atypical and significant hardship").  "A liberty interest does not arise even when administrative segregation imposes severe hardships, such as denial of access to vocational, educational,

recreational, and rehabilitative programs, restrictions on exercise, and confinement to a cell for lengthy periods of time." *Toussaint v. McCarthy*, 801 F.2d 1080, 1092 (9th Cir. 1986) (internal quotations omitted).

Plaintiff's allegations do not reflect "atypical and significant hardship." *Sandin*, 515 U.S. at 484.  Plaintiff does not state consistently how long he has been in the SHU.  Plaintiff does not specify whether he is in administrative or disciplinary segregation, nor does he make any comparison between administrative segregation, disciplinary segregation, and the general population.  The only "hardships" Plaintiff alleges are his inability to walk to the dining facility, play handball, get some sun, converse with other inmates, and visit the library.  This does not state a cognizable due process claim.  Plaintiff's due process claim against Caplin is DISMISSED with leave to amend.

## V. <u>LEAVE TO AMEND</u>

Plaintiff may file an amended complaint on or before October 16, 2020 to cure the deficiencies in his Complaint identified above.  If Plaintiff elects to file an amended complaint, he must comply with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Hawaii. Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  An amended complaint will supersede the preceding complaint.  *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008

(9th Cir. 2015); LR99.7.10. An amended complaint must be short and plain, comply with Fed. R. Civ. P. 8, and be submitted on the court's prisoner civil rights form.  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## VI.  28 U.S.C. § 1915(g)

If Plaintiff fails to file an amended complaint, or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VII.  JURY TRIAL DEMAND

Plaintiff separately demands a jury trial.  *See* Mot. ECF No. 6.  Because the Complaint is DISMISSED, the Court DENIES the motion as moot.  Plaintiff may include in any amended complaint his demand for a jury trial, if he chooses.  *See* Fed. R. Civ. P. 38(b).

17

## VIII.  CONCLUSION

(1) The Complaint is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a colorable claim for relief.  Plaintiff's claims against all Defendants in their official capacities, his due process claims in Count III against Defendants Hyun, Hee, Otani, and Tui, and his claims arising out of his 2014 transfer to the SCC are DISMISSED WITH PREJUDICE.  Plaintiff's remaining claims are DISMISSED with leave to amend, with the proviso that any claim arising out of the conditions of confinement at the SCC must be realleged and brought, if at all, in Arizona.

(2) The Motion for a Jury Trial is DENIED as moot.

(3) Plaintiff may file an amended complaint, consistent with this Order, on or before October 16, 2020.  Failure to file an amended complaint by October 16, 2020 may result in dismissal of this action with prejudice.

//

//

//

(4) The Clerk is directed to send Plaintiff a blank prisoner civil rights complaint form so that he can comply with the directions in this Order.

IT IS SO ORDERED.

Dated: September 25, 2020 at Honolulu, Hawaii.



_____
Derrick K. Watson
United States District Judge

---

*Jhon Brisken v. Dr. Austin Whiteing*; Civil No. 20-00301 DKW-KJM; **ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND**

H:\Cases\Brisken, John 20-301-DKW-KJM\Complaint\Brisken v. Whiteing, et al. 20-301-DKW-KJM Scrg '20 (11th, parole, medical, due process) draft to chambers.docx

19